2002 WY 163

**Robert A. HART, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 01–247.**

Supreme Court of Wyoming.

Oct. 29, 2002.

Carol Seeger of Carter Law Office, Gillette, WY, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1]   Robert A. Hart (Hart) entered a conditional plea of *nolo contendere* to one count of taking indecent liberties with a minor, reserving his right to appeal the district court's pretrial ruling on the admissibility under W.R.E. 404(b) of certain uncharged misconduct evidence.   We affirm.

## ISSUE

[¶ 2]   The single issue before this Court is the propriety of the district court's ruling that certain uncharged misconduct evidence would be admissible at trial.

## FACTS

[¶ 3]   On November 14, 2000, a sixteen-year-old girl (hereinafter C.B.) reported to the Moorcroft police that during a car trip from Rapid City, South Dakota, to Moorcroft on September 10, 2000, Hart had fondled her thighs, breasts, and vagina, and that he had digitally penetrated her vagina.   Hart is the husband of C.B.'s great-aunt, who was present in the car's back seat with Hart and C.B. Hart's wife was sleeping during the alleged incident.   C.B.'s grandfather and great-uncle occupied the front seat.   Hart was charged with one count of taking indecent liberties

* Chief Justice at time of expedited conference.

with a minor, in violation of Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001).

[¶ 4] On May 9, 2001, Hart filed a request for a pretrial hearing to determine the admissibility under W.R.E. 404(b) of any uncharged misconduct evidence.[1] On the day of the hearing on the motion, the State filed a Notice of 404(b) Evidence, in which it listed four witnesses who would testify about prior uncharged misconduct by Hart. Those witnesses were:

1. P.R. A thirty-eight-year-old cousin of C.B.'s mother would be called to testify that Hart had molested her from her earliest childhood memories until she was about ten years old. The molestations, which consisted of Hart fondling her breasts and vaginal area with his hands and penis, usually took place during times when P.R. was staying overnight at Hart's residence, but also occurred at her home and on a fishing trip. Hart's wife was often present, either sleeping in another room or in the same room, but unaware of what was happening.

2. T.L. A thirty-nine-year-old cousin of C.B.'s mother would be called to testify that Hart had molested her from the time she was ten years old until she was thirteen years old. As with P.R., the molestations, which consisted of Hart fondling and penetrating her with his hands and penis, would occur when T.L. stayed overnight at Hart's residence and Hart would come into her bedroom when he returned from working a swing or second shift. T.L. would also testify that she told her uncle, L.R., about the molestation.

3. L.R. L.R. was expected to testify that T.L. did, indeed, tell him at the time about the molestation, but that he did nothing about it because he did not believe her.

4. D.B. C.B.'s mother would be called to testify that when she was nine or ten years old, she was molested by Hart at Hart's residence in a manner and under circumstances similar to those described by P.R. and T.L.

[¶ 5] In a decision letter issued after the hearing, the district court ruled as follows:

In light of the nature of the particular allegations made against the Defendant, and given the nature and similarity of the proposed 404(b) evidence, specifically the testimony of [P.R.] and [T.L.], the court finds that the same should be admitted.

With regard to the proffered testimony of [L.R.] and [D.B.], the court reserves its ruling as the admissibility of the same hinges on trial developments.

[¶ 6] Subsequently, Hart's attorney filed a Request for Specific Findings of Fact and Conclusions of Law Relating to Admissibility of 404(b) Evidence, in which he argued that, in its decision letter, the district court (1) did not identify the purpose or purposes for which the proposed evidence was being admitted; and (2) did not analyze how the evidence was more probative than prejudicial. Without further hearing, the district court issued a second decision letter, the substantive portion of which is as follows:

As per *Vigil v. State,* 926 P.2d 351 (Wyo. 1996) the test the court is to apply in gauging 404(b) submissions is the same as provided for under the comparable federal rule. Consequently, the court in making its analysis has looked to federal authorities as well as state authorities. Based upon all of the authorities, the court in the prior analysis determined, and should have stated that such evidence may be used to show:

1. Motive;

2. Intent and/or *modus operandi;*

3. Identification;

4. Plan or scheme; and,

5. Absence of mistake or accident.

In this case the allegations are that Defendant committed improper sexual acts against a minor. Moreover, the alleged act is to have been committed in the presence of other adults. The evidence noticed

---

1. W.R.E. 404(b) provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

under 404(b) is remarkably similar. While the court is troubled by the remoteness in time issue, the offered witnesses are to testify that this same Defendant took sexual advantage of them when they were minor children. The circumstances of the proposed testimony is such that it appears that Defendant's actions against the 404(b) witnesses were very similar to the allegations made in the current action. All of the women are/were minors and relatives. Adults were present at the times of the alleged acts. Defendant is alleged to have operated in a fashion that would call the credibility of purported victims into question.

Given the circumstances of the proposed 404(b) witness[es] as presented at the hearing, the fact that they had no reason to communicate with each other regarding this matter, the fact that at least one of them reported abuse as a child and was disbelieved, among other things, the court is of the opinion that the proposed testimony is reliable enough to be considered by the trier of fact for the purposes stated herein. The fact that the proposed witnesses are now adults appears to the court to lend credence to the proposed testimony. Why would these two women, although related, essentially strangers, come forth after all of these years with stories of sexual abuse at the hands of Defendant? Why would these stories have so many similarities to the current allegations? Thus, under the test which this court has applied under Rule 403, the offered 404(b) testimony is more probative than prejudicial.

[¶ 7] Following this ruling, Hart and the State entered into a plea agreement wherein Hart entered a conditional plea of *nolo contendere* to the charged offense, but reserved his right under W.R.Cr.P. 11(a)(2) to appeal the district court's rulings under W.R.E.

404(b). Judgment was entered against Hart and, after a presentence investigation, he was sentenced to the custody of the Department of Corrections for a period of not less than thirty months and not more than seventy-two months. The sentence was suspended, however, under Wyo. Stat. Ann. § 7–13–107 (LexisNexis 2001), and Hart was given one year in the county jail, to be followed by six years of supervised probation. Hart timely appealed.

## DISCUSSION

[¶ 8] Where an objection has been lodged at trial, as in the instant case, the standard for review of rulings under W.R.E. 404(b) is abuse of discretion. *Johnson v. State*, 936 P.2d 458, 462 (Wyo.1997) (*quoting Sturgis v. State*, 932 P.2d 199, 201 (Wyo. 1997)). The rulings of the district court are entitled to considerable deference on appeal, and will not be reversed so long as there exists a legitimate basis for the ruling. *Brower v. State*, 1 P.3d 1210, 1213 (Wyo. 2000). In *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo.2002), we recently reviewed Wyoming's uncharged misconduct evidence jurisprudence. We will not repeat that discussion here. Suffice it to say that, while continuing to adhere to the test for the admissibility of such evidence found in *Vigil v. State*, 926 P.2d 351 (Wyo.1996), we did in *Gleason*, 2002 WY 161, ¶¶ 26–30, 57 P.3d at 332, require trial courts in the future to ensure that the record reflects not only specific identification of the proper purpose or purposes for which such evidence is being admitted, but also sufficient analysis of probativeness and prejudicial effect to allow for appellate review.[2] Because the instant case was heard before *Gleason* was published, we

2. Under *Vigil*, the trial court must apply the following test in determining the admissibility of uncharged misconduct evidence under W.R.E. 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Vigil*, 926 P.2d at 357 (*quoting United States v. Herndon*, 982 F.2d 1411, 1414 (10th Cir. 1992)). This test encompasses the requirement for relevancy under W.R.E. 401 and 402, as well as the requirement to determine prejudicial effect under W.R.E. 403.

will not herein apply that case's more demanding standards.

[¶ 9] The State's notice of uncharged misconduct evidence did not set forth any proposed purpose for the testimony. During the hearing, the prosecutor argued that the uncharged misconduct evidence was probative of motive, intent, identity, absence of mistake or accident, and credibility of the victim. In addition, although he did not use the phrase *modus operandi* or the words plan or scheme, he did argue for the probative value of the "pattern" of Hart's conduct. In its second decision letter, the district court found the evidence admissible to prove motive, intent and/or *modus operandi*, identification, plan or scheme, and absence of mistake or accident. We must assume, because that is all the information we have, that the State would have been allowed to argue, and the jury would have been instructed, that the testimony of the four uncharged misconduct evidence witnesses could be considered as proof of all the purposes listed by the district court.

[¶ 10] Wyoming has a long line of cases in which similar uncharged misconduct has been admitted in child sexual abuse and indecent liberties cases, most often as probative of motive or intent. *See Gleason*, 2002 WY 161, ¶ 19, 57 P.3d at 332, slip op. at 7. For instance, in *Brown v. State*, 736 P.2d 1110, 1113 (Wyo.1987), testimony by the victim and her half-sister in a prosecution for incest, implicating defendant in prior sexual abuse, was held admissible because aberrant sexual behavior is probative of motive. Similarly, in *Elliott v. State*, 600 P.2d 1044, 1048–49 (Wyo. 1979), testimony of the victim's older sister as to similar misconduct by the defendant with her was held admissible in a trial for second-degree sexual assault to prove motive based on pedophilia. The record in the instant case is sufficient for us to conclude that it was not an abuse of discretion for the district court to find the uncharged misconduct evidence to be relevant and to be probative of motive and intent. Ignoring for now

the question of remoteness in time, which will be discussed later herein, the district court's decision as it relates to motive and intent was an appropriate exercise of discretion, given the facts and arguments presented, and given Wyoming precedent at the time.[3]

[¶ 11] Identity, of course, is one of the purposes listed within W.R.E. 404(b) for the introduction of uncharged misconduct evidence. Perhaps not surprisingly, this Court has held that evidence may be admitted under the rule when the identity of the perpetrator of the charged crime is at issue. *McCone v. State*, 866 P.2d 740, 752 (Wyo. 1993); *Longfellow v. State*, 803 P.2d 848, 853 (Wyo.1990). We have also held that identity is always an element of the crime charged that must be proved by the·State, and that, therefore, it is always a material issue, whether or not in dispute, when applying W.R.E. 404(b). *Rivera v. State*, 840 P.2d 933, 940 (Wyo.1992); *Pena v. State*, 780 P.2d 316, 321 (Wyo.1989). Consequently, if uncharged misconduct evidence tends to prove the identity of the perpetrator of the charged crime, it is not rendered inadmissible because it tends to prove that he committed another crime. *Pena*, 780 P.2d at 321 (*quoting Valerio v. State*, 429 P.2d 317, 318 (Wyo. 1967)).

[¶ 12] The preceding analysis, however, takes the evidence only so far toward admission. Even if evidence is relevant and probative of identity, the district court still must determine whether it is more prejudicial than probative. The record in the instant case does not reveal how the district court balanced probative value against prejudicial effect as the evidence related to proof of identity. There clearly was no need for the uncharged misconduct testimony to prove that it was Hart who was sitting in the back seat with C.B. Not only did Hart not deny

---

3. As noted in *Gleason*, 2002 WY 161, ¶ 19 n. 3, 57 P.3d at 332 n. 3, three new rules-F.R.E. 413, 414, and 415—have been added to the Federal Rules of Evidence specifically authorizing the admissibility of similar crimes evidence in sexual assault and child molestation cases. Under those rules, admissibility is not limited to the "proper purposes" of Rule 404(b). A similar exception has been recognized by the courts of at least one state, Arizona, where uncharged misconduct evidence involving "sexual aberration" is admissible to prove the defendant's "propensity to commit similar crimes." *State v. Roscoe*, 184 Ariz. 484, 910 P.2d 635, 642, *cert. denied*, 519 U.S. 854, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996).

that fact, but also there were three people in the car in addition to C.B. who could have identified Hart. Had proof of identity been the only identified purpose for admission of the uncharged misconduct testimony, it would have been an abuse of discretion for the district court to admit it without balancing its probative value against its prejudicial effect.

[¶ 13] The same problem does not exist as to admission of the evidence to prove that Hart did not mistakenly or accidentally touch C.B. Hart denied touching C.B. at all, but he also said that the only way he could have touched her would have been by accident. Had he chosen to pursue that defense at trial, the evidence of his prior sexual assaults in a similar manner and under similar circumstances would have been highly probative on that issue. It was not an abuse of discretion for the district court to determine that the evidence was more probative than prejudicial in that regard.

[¶ 14] The district court listed *modus operandi* and plan or scheme as separate purposes for admission of the evidence. Generally, *modus operandi* evidence is not submitted to prove *modus operandi*, itself, but to prove the identity of the perpetrator. The theory is that when the unique characteristics of a crime known to have been committed by the defendant are repeated in the charged crime, the fact that the defendant committed the prior crime is proof that he also committed the charged crime. *Germany v. State*, 999 P.2d 63, 68 (Wyo.2000) (*quoting Pena*, 780 P.2d at 322); *Johnson*, 936 P.2d at 463; *Bishop v. State*, 687 P.2d 242, 245 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985), *abrogated on other grounds by Vigil*, 926 P.2d at 356–57. Somewhat similarly,

[e]vidence of other crimes or misconduct to demonstrate a plan simply depends upon a showing of a relationship between the crimes and the defendant.... These prior bad acts also corroborated identity.

*Rivera*, 840 P.2d at 940. In truth, except perhaps in the pure "signature crime" context, there is not a clear line that can be drawn between evidence revealing a *modus operandi* and evidence revealing a plan or scheme. Some courts discuss the concept in terms of a "pattern," just as did the prosecutor in the instant case. *See, for example, United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir.1987).

[¶ 15] The district court's second decision letter emphasized, in addition to the remarkable similarity between the prior acts and the charged act, the credibility and reliability of the proposed uncharged misconduct evidence testimony.[4] Coupled with the latter observation is the district judge's statement that Hart "is alleged to have operated in a fashion that would call the credibility of purported victims into question." This suggests that the district court also was admitting the evidence to bolster the credibility of the victim and to corroborate her testimony, both of which are permitted purposes. *Heinemann v. State*, 12 P.3d 692, 701 (Wyo. 2000), *cert. denied*, 532 U.S. 934, 121 S.Ct. 1386, 149 L.Ed.2d 310 (2001).[5] Where a defendant denies that the charged act took place, evidence of prior similar acts may serve to rebut the allegation of victim fabrication. *People v. Janes*, 942 P.2d 1331, 1336–37 (Colo.App.1997).

[¶ 16] The proponent of uncharged misconduct evidence is not limited to but one proposed purpose for its admission. *Gleason*, 2002 WY 161, ¶ 26, 57 P.3d at 332; *Sturgis*, 932 P.2d at 203. On the other hand, if the purpose or purposes are not specifical-

---

4. It is, of course, the similarity that makes the evidence relevant. *State v. Rucker*, 267 Kan. 816, 987 P.2d 1080, 1087 (1999). The acts, or their surrounding circumstances, must be similar, though not identical. *State v. Whitlow*, 285 Mont. 430, 949 P.2d 239, 244 (1997).

5. Some justifications for admission seem indistinguishable. In *Rivera*, for example, this Court held that similar uncharged misconduct evidence

"disclosed motive by demonstrating a common style of misconduct to achieve sexual gratification and served to demonstrate Rivera planned and intended to effect sexual intrusion in each instance." *Rivera*, 840 P.2d at 940. Similarly, in *State v. McGuire*, 135 Idaho 535, 20 P.3d 719, 722–23 (2001), the defendant's conduct was admitted to show a common scheme or plan for the intent of sexual gratification.

ly identified, the balance of the *Vigil* test cannot be applied. Obviously, relevance and probativeness cannot be determined without knowing what it is the evidence is meant to prove. Neither can the trial court balance probativeness against prejudicial effect. Further, as pointed out by defense counsel in the instant case, the jury cannot be instructed to limit its consideration of the evidence to a particular consequential fact, such as motive, until such has been identified.

[¶ 17] A similar problem arises where the trial court, in admitting evidence under W.R.E. 404(b), simply announces that such evidence is more probative than prejudicial, without any reflection in the record of the analysis that resulted in that determination. In *Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 332, slip op. at 9–11, we set out the factors that should be considered in that process, quoting *Rigler v. State*, 941 P.2d 734, 737 n. 1 (Wyo.1997) and citing *Dean v. State*, 865 P.2d 601, 609–10 n. 2 (Wyo.1993), *abrogated and modified on other grounds by Vigil*, 926 P.2d 351. At the motion hearing in the instant case, defense counsel went through those factors one by one, and appellate review would be enhanced had the district court done the same in its decision letter.

[¶ 18] The question before this Court is whether the district court adequately scrutinized the State's proposed uncharged misconduct evidence. While the record does not contain the detail we will require in the future, it is sufficient to demonstrate that the district court utilized the *Vigil* test in considering admissibility, that it identified appropriate purposes for admission, and that it balanced probative value against prejudicial effect. To that extent, there was a "legitimate basis ... for the ... ruling...." *Brower*, 1 P.3d at 1213.

[¶ 19] That leaves only the question of the legal effect of the fact that the prior acts were so remote in time. P.R., who was thirty-eight years old at the time of trial, intended to testify about events that occurred until she was about ten years old, so those events occurred, at the earliest, twenty-eight years earlier. T.L., who was thirty-nine years old at the time of trial, was to testify about molestations that occurred from the age of ten to the age of thirteen, meaning those events occurred between twenty-six and twenty-nine years earlier. While D.B.'s age is not cited in the record, she is a cousin to P.R. and T.L., and her testimony would have been about molestations that occurred when she was nine or ten years old.

[¶ 20] Both counsel and the district court realized that a significant fact in the balance between probativeness and prejudicial effect was the remoteness in time of the prior incidents. At the end of the motion hearing, the district judge commented that, "in terms then of the remoteness in time, I've got to make a determination whether it's gotten to a place now where it's more prejudicial than probative." In its second decision letter, the district court reiterated this concern and then admitted the evidence because it found the witnesses to be very reliable and because the prior acts were very similar to the charged act.

[¶ 21] As we stated earlier herein, it is not our task to apply the *Vigil* test. Rather, on the point at issue, it is simply our task to determine whether the district court abused its discretion in finding the testimony admissible despite the remoteness concern. The record reveals· support for the district court's findings that the witnesses appeared reliable and the events were very similar. It is not our role to second-guess the district court in that situation. Rather, we must decide whether, as a matter of law, W.R.E. 404(b) does not envision admission of uncharged misconduct evidence that occurred nearly thirty years earlier. In that regard, it must be remembered that proximity in time is not a requirement for admission; rather, it is but one factor to be considered. *United States v. Burk*, 912 F.2d 225, 228 (8th Cir. 1990) (*quoting United States v. Drew*, 894 F.2d 965, 970 (8th Cir.), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990), *cert. denied*, 516 U.S. 817, 116 S.Ct. 72, 133 L.Ed.2d 33 (1995)).

[¶ 22] It probably could go without saying that courts should be extremely cautious in admitting evidence of "old" acts. *United States v. Simtob*, 901 F.2d 799, 808

(9th Cir.1990). At the same time, however, there is no specific time limitation in determining remoteness of the similar act. *Frenzel v. State*, 849 P.2d 741, 752 (Wyo.1993), *cert. denied*, 522 U.S. 959, 118 S.Ct. 388, 139 L.Ed.2d 303 (1997) (*citing Britton v. State*, 845 P.2d 1374, 1376 (Wyo.1992)). Rather, we have previously emphasized the discretionary nature of such decisions:

> We do not choose to impose an arbitrary year or month limitation of evidence admissible under W.R.E. 404(b). The trial judge must be afforded certain discretion in evidentiary rulings. *Tennant v. State*, 786 P.2d 339 (Wyo.1990); *Pena v. State*, 780 P.2d 316 (Wyo.1989). The test for remoteness cannot be a mechanical process based only on the amount of time that elapsed between the prior act and the present offense. *United States v. Scott*, 701 F.2d 1340, 1345 (11th Cir.1983). Decisions have upheld the admission of evidence of crimes committed more than eight years before the current charge. *See, e.g., United States v. Lopez–Martinez*, 725 F.2d 471, 476 (9th Cir.1984) (admission of prior act committed eight years before was acceptable because it was similar enough to the charged crime to be relevant); *United States v. Foley*, 683 F.2d 273, 278 (8th Cir.1982) (eleven years acceptable; in determining whether evidence is too remote, the court should apply a reasonableness standard); *United States v. Engleman*, 648 F.2d 473, 478 (8th Cir.1981) (thirteen years acceptable); *Gezzi v. State*, 780 P.2d 972 (Wyo.1989) (evidence of acts going back seven or eight years). Questions concerning remoteness of evidence are left to the sound discretion of the trial court and are subject to challenge only for clear abuse of discretion. *Goodman v. State*, 601 P.2d 178, 184 (Wyo.1979).

*Britton*, 845 P.2d at 1376. *See also United States v. Olivo*, 80 F.3d 1466, 1468–69 (10th Cir.), *cert. denied*, 519 U.S. 906, 117 S.Ct. 265, 136 L.Ed.2d 189 (1996).

[¶ 23] In *Griswold v. State*, 994 P.2d 920, 926 (Wyo.1999), we declined to set an arbitrary ten-year time limit for admissibility of uncharged misconduct evidence under W.R.E. 404(b), and reiterated the *Britton* emphasis on the trial judge's discretion. We also stated that, rather than making testimony inadmissible, remoteness in time of the prior act may affect the weight of the evidence. *Griswold*, 994 P.2d at 926. *See also People v. Douglas*, 50 Cal.3d 468, 268 Cal. Rptr. 126, 149, 788 P.2d 640, 663 (1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1023, 112 L.Ed.2d 1105 (1991); *Harp v. State*, 518 N.E.2d 497, 500 (Ind.App.1988); and *State v. Whitlow*, 285 Mont. 430, 949 P.2d 239, 245 (1997). Remoteness in time renders the evidence inadmissible only if the remoteness is so great that the evidence has no value. *State v. Martin*, 279 Mont. 185, 926 P.2d 1380, 1386 (1996).

[¶ 24] The standard is one of reasonableness. *Burk*, 912 F.2d at 228. In determining the reasonableness of the admission of remote acts of uncharged misconduct, we must consider the context in which the evidence was introduced and the theory supporting its admissibility. *United States v. Obiuwevbi*, 962 F.2d 1236, 1241 (7th Cir. 1992); *Beasley*, 809 F.2d at 1277. Uncharged misconduct may be extremely probative despite the passage of a substantial amount of time. *People v. Soto*, 64 Cal. App.4th 966, 75 Cal.Rptr.2d 605, 621 (1998). Relevance is, of course, dependent to some degree on time; the degree of similarity between the charged crime and the prior act must be inversely proportional to the time span. *Allen v. State*, 644 A.2d 982, 988 (Del. Supr.1994) (*quoting Com. v. Shively*, 492 Pa. 411, 424 A.2d 1257, 1259 (1981)). Probativeness is lessened further where, in addition to the passage of considerable time, the remote acts are "factually distinct" from the charged act. *State v. Parks*, 71 Or.App. 630, 693 P.2d 657, 658–59 (1985) (admission of a prior alleged assault approximately twenty years before the charged shooting reversed because prior act was "too remote and factually distinct" to have any tendency to prove defendant's state of mind at time of shooting).

[¶ 25] In child sexual assault cases, several courts have admitted evidence of the sexual exploitation of children twenty years or more earlier. *See, for example, United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir.1997) and *Sewell v. State*, 244 Ga.App.

449, 536 S.E.2d 173, 177 (2000). One circumstance where such evidence has been admitted is where there has been a pattern of molesting prepubescent females. *State v. Jackson*, 625 So.2d 146, 149 (La.1993). Some courts have admitted remote acts under the theory that the sexual abuse of children within a family may only occur generationally, as the children reach the appropriate age for exploitation. *State v. Weatherbee*, 158 Ariz. 303, 762 P.2d 590, 592 (1988); *Heuring v. State*, 495 So.2d 893, 894 (Fla.App.1986), *vacated on other grounds*, 513 So.2d 122 (Fla. 1987); *State v. McGuire*, 135 Idaho 535, 20 P.3d 719, 723 (2001).

[¶ 26] The *Heuring* case provides some useful analysis for cases of this nature. Heuring was convicted of the sexual battery of his stepdaughter. The trial court admitted the testimony of Heuring's daughter that he had sexually molested her twenty years previously. In affirming Heuring's conviction, the District Court of Appeals of Florida reasoned as follows:

> Remoteness may relate to passage of time or to present relationship with an issue. If mere passage of time were determinative of remoteness, we would hesitate to consider twenty-year-old incidents relevant. In determining whether evidence is too remote to be relevant, and therefore admissible, the court must consider not the passage of time alone, but the effect of the passage of time on the evidence. Remoteness in terms of the passage of time precludes the use of evidence that has become unverifiable through loss of memory, unavailability of witnesses and the like. It may also suggest that the absence of similar conduct for an extensive period of time indicates that such conduct is no longer characteristic of the accused. But it is not the propensity towards such conduct that is relevant. It is the *manner* of perpetrating the crime which is relevant.
>
> In this case, the type of crime committed can occur only generationally. The appellant twice had the opportunity to sexually batter young females under his familial authority and did so in like manner on each occasion. The daughter's memory of the incident and its details lost nothing

through the passage of time. Appellant took the position that he never sexually battered any child, not that he couldn't remember.

*Heuring*, 495 So.2d at 894 (emphasis in original). In a specially concurring opinion, Judge Smith voiced some concerns over the majority's analysis of relevance and the generational nature of the crime, concurring instead because the evidence revealed a "pattern of criminality" that Florida precedent found relevant. *Id.* at 894–95 (Smith, J., specially concurring).

[¶ 27] On further appeal, the Supreme Court of Florida reversed Heuring's conviction on other grounds, but affirmed the admission of the daughter's prior acts testimony. *Heuring v. State*, 513 So.2d 122, 124 (Fla.1987). In doing so, the higher court commented as follows on the reasoning of the District Court of Appeals:

> As the court noted, the opportunity to sexually batter young children in the familial setting often occurs only generationally. Heuring sexually battered the young female members of his family when the opportunity arose. Heuring does not dispute the court's finding that the passage of time had no effect on the witness's memory. We agree with the district court that the passage of time in this instance did not affect the reliability of the evidence.

*Id.* at 124. After quoting at length a California court's analysis of the inference of identity that may arise from evidence of a "signature crime," the Florida Supreme Court then came to the following conclusion:

> Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue. In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design, even though the distinction between sexual de-

sign and sexual disposition is often tenuous. We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect.

*Id.* at 124–25.

[¶ 28] We have quoted at length from these two *Heuring* opinions because the reasoning contained therein is quite similar to the reasoning of the prosecutor and the district court in the instant case. Although he offered the common "laundry list" of purposes for admissibility of the uncharged misconduct evidence, the prosecutor's argument at the motion hearing emphasized two points: the pattern of Hart's criminal conduct and the need to corroborate the victim's somewhat unusual story. Similarly, while the district court's second decision letter listed numerous purposes for admission of the testimony, emphasis was placed on victim credibility and the reliability of the proposed witnesses' testimony.[6]

[¶ 29] It is at this point that we need to remind ourselves that we do not apply the *Vigil* test to proposed uncharged misconduct evidence. That is done by the trial court. The question for this Court is simply whether the district court abused its discretion.

Under the rule, the judge errs if the judge fails to exercise discretion, refuses to exercise discretion, or does not ensure that the record reflects an exercise of discretion.

2 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 8:02 at 11(1999) (footnotes omitted). We hold that the district court in the instant case has not abused its discretion in the way it analyzed and admitted the proposed evidence. On the specific issue of remoteness in time, we reach the same conclusion. The district court specifically addressed the remoteness issue and found the testimony of the proposed witnesses to be highly probative and reliable, despite the passage of time. The record supports that finding, and we will not substitute our judgment for that of the district court. There is nothing in the record to suggest that the proposed testimony was either stale absolutely, due solely to the passage of time, or stale relatively, because of any events or changes during the intervening period. *See* 2 Edward J. Imwinkelried, *Uncharged Misconduct Evidence, supra,* § 8:08.

## CONCLUSION

[¶ 30] The district court did not abuse its discretion in finding admissible the testimony as to similar acts of misconduct by Hart more than twenty-five years before the charged offense. The testimony was offered for proper purposes under W.R.E. 404(b) and its nature was such that it remained reliable, relevant, and probative. We cannot say that its prejudicial effect outweighed its probative value. The remoteness in time of the uncharged misconduct testimony was a factor to be considered by the jury in determining the weight the testimony should be given. Because this case was heard before the opinion in *Gleason* was published, we find the

---

**6.** One commentator has suggested that the types of distinctions made in *Heuring* are meaningless:

The First District Court of Appeal allowed the admission of [the daughter's] testimony in *Heuring* because it established a pattern of criminality. Though rejecting the district court's rationale, the Florida Supreme Court affirmed the result, holding that the better view was to treat the evidence as relevant to corroborate the victim's testimony, not to establish a pattern of criminality. However, the court was simply playing a game of semantics. There is no difference, in effect, between admitting evidence to show a pattern of criminality and admitting evidence to corroborate the victim's testimony. The evidence was relevant to corroborate the victim's testimony because

it established a pattern of criminality. The effect of the court's decision is to allow evidence to establish that the defendant had the propensity to commit the offense in order to bolster the credibility of the victim. Whether it is to corroborate the victim's testimony, or to establish a pattern of criminality, the evidence will be admitted solely to show the defendant's propensity to commit crimes, which is strictly prohibited by section 90.404(2).

John McCorvey, Note, *Corroboration or Propensity? An Empty Distinction in the Admissibility of Similar Fact Evidence,* 18 Stetson L.Rev. 171, 187–88 (1988) (footnote omitted). This insightful analysis underscores the difficult line-drawing inherent in exercising discretion under Rule 404(b).

record sufficient to sustain the district court's decision.

[¶ 31]   Affirmed.