# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 29

OCTOBER TERM, A.D. 2012

*March 13, 2013*

KENNETH JAMES HUCKFELDT,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-12-0183

*Appeal from the District Court of Sweetwater County*
*The Honorable Nena James, Judge*

*Representing Appellant:*
   W. Keith Goody, Cougar, WA.

*Representing Appellee:*
   Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Darrell D. Jackson, Prosecution Assistance Clinic, Emily N. Thomas, Student Director; and Adrianna J. Potts, Student Intern. Argument by Mr. Racines.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]   A jury convicted Kenneth Huckfeldt of sexual assault in the first degree and sexual abuse of a minor in the first degree. Huckfeldt appeals the district court's denial of a continuance motion and the court's admission of uncharged misconduct evidence of his prior conviction for sexual assault of a minor. We find no abuse of discretion in either ruling and affirm.

## ISSUES

[¶2]   Huckfeldt presents the following issues for our review:

> I.      Did the district court abuse its discretion when it denied Mr. Huckfeldt's motion for continuance of the trial due to a missing witness and was it mistaken when it found that the public defender did not use due diligence?
>
> II.     Did the district court abuse its discretion in admitting into evidence testimony of the victim that resulted in a prior conviction of Mr. Huckfeldt for sexual assault?

## FACTS

[¶3]   In June 2011, HG, then nineteen, reported that her stepfather, Kenneth Huckfeldt, had raped her approximately three years earlier, shortly before her sixteenth birthday. HG testified that the assault occurred in an ice fishing hut while she was alone with Huckfeldt ice fishing at Flaming Gorge reservoir. Toward the end of that afternoon, when it began to get dark, HG asked Huckfeldt if they could go home. Huckfeldt first responded that they could not go home until they had caught their limit, and then a short time later he told HG that the only way they could go home was if she "gave him a piece of ass." HG refused and turned her back to Huckfeldt. Huckfeldt then grabbed HG from behind and pulled her off her chair. HG described what followed:

> A.      When I was on the floor I tried to get back up and he pushed me down. And I asked him, I was like what are you doing, and he said we are going to go home. And I told him I don't know what you are doing. Get off of me and leave me alone. And I tried to get back up again and he pushed me down. And he held my arms down with his knees like right up by my muscle part and he covered my mouth and told me to not scream or anything or else he would hurt me. After he let my mouth go, he kept his knees on my arms and he grabbed both of my arms and put them above my head and

1

he held those there, and he was pulling my pants down behind him.

> Q.  Did he ask you to do anything?
> A.  He told me to suck his dick.
> Q.  Okay.  What happened then?
> A.  I told him no, it's not going to happen.  I told him to leave me alone.
> Q.  Okay.  What happened then?
> A.  He started pulling off my pants.  And the free part of my arm that I had, I tried pulling them back up, but I just couldn't move anymore.  And I was in shock, and it just happened.
> Q.  What happened?
> A.  Sexual intercourse.
> Q.  How far down did your pants get?
> A.  Almost to my knees.
> Q.  What did he – when you say sexual intercourse, what do you mean?
> A.  His penis went into my vagina.
> Q.  Did he do anything else while he was having sex with you?
> A.  He was groping me from the top, like of my upper body over my clothes.
> Q.  What were you doing?
> A.  I was screaming and crying and kicking and trying to get him off of me.
> Q.  Did he say anything to you?
> A.  While it was going [on] he said who is fucking you, sweetie pie.  And after it was all over he said how does it feel knowing that your daddy just fucked you.

[¶4]   HG testified that Huckfeldt threatened her and warned her not to tell anyone what had happened, and after the incident repeatedly asked her if she had told anyone what happened.  HG did not tell anyone about the incident until she got married and discussed it with her husband, EH.  She did not report the incident to her mother or law enforcement until she learned that her sister KA, who is one year older than HG, reported that Huckfeldt had inappropriately touched her while she was cleaning the Huckfeldt home.

[¶5]   The incident involving KA occurred in May 2011.  KA, who was then twenty years old, married and living independently of her parents, was cleaning the Huckfeldt home to earn extra money.  KA reported that during her visit on that occasion, Huckfeldt touched her breasts and she hit his hand away.  KA then asked to be paid, and Huckfeldt

2

responded that he would pay her fifty dollars if she showed him her breasts and otherwise he would pay her only twenty dollars. KA testified that because she was angry, she tried to alter the amount of the check before she cashed it. After the bank refused to cash the check, KA called her mother and told her about Huckfeldt touching her breasts and offering her money if she showed him her breasts.

[¶6]    On June 15, 2011, law enforcement interviewed Huckfeldt.[1]    During that interview, Huckfeldt admitted to ice fishing alone with HG during the time period alleged, but he denied that he raped her. Huckfeldt admitted instead that he had had consensual sex with HG on three occasions over the course of a week and a half when she was nineteen. According to Huckfeldt, when he asked HG questions concerning whether she had told anyone, or left voicemail messages to that effect, he was referring not to the alleged incident when she was sixteen but rather to their consensual sex when she was nineteen.

[¶7]    During his interview, Huckfeldt also denied that he had touched KA's breasts. He admitted, however, that he had said to KA that if she wanted money, she had to earn it, after which he said, "Let me squeeze your tits, and I'll give you fifty bucks."

[¶8]    On July 7, 2011, the State charged Huckfeldt with sexual assault in the first degree and sexual abuse of a minor in the first degree, relating to HG's allegations, and with incest, relating to KA's allegations. On September 1, 2011, the State filed notice of its intent to introduce uncharged misconduct evidence relating to Huckfeldt's 1995 conviction for second degree sexual assault. The evidence concerned Huckfeldt's sexual assault of his then girlfriend's eleven-year-old daughter, and the State sought its admission to show motive, intent and knowledge, and to rebut Huckfeldt's expected claim of fabrication. Huckfeldt objected to the evidence, and on December 8, 2011, the district court held a *Gleason* hearing and ruled that the evidence relating to Huckfeldt's 1995 conviction was admissible. On January 26, 2012, the court followed up its decision with a written decision letter detailing its analysis of the *Gleason* factors.

[¶9]    On February 2, 2012, four days before trial, Huckfeldt filed a motion to continue on grounds that the whereabouts of a material defense witness were unknown and defense counsel required additional time to locate him. Following a motions hearing that same day, the district court denied the motion to continue, finding that the witness' proposed testimony lacked materiality, that questions existed regarding the testimony's admissibility, that the missing witness was a fugitive who defense counsel had not shown could be located within a reasonable amount of time, and that defense counsel had not exercised due diligence in procuring the witness.

---

[1]   Huckfeldt did not testify at trial, but the State submitted the recording of his interview, which was approximately sixty-nine minutes in length, as an exhibit. The recorded interview was played in its entirety for the jury.

[¶10] On February 8, 2012, after three days of trial, a jury returned a verdict finding Huckfeldt guilty on the first degree sexual assault and sexual abuse of a minor charges and not guilty on the incest charge. On March 30, 2012, the district court held a sentencing hearing and sentenced Huckfeldt to twenty-five to fifty years on the first degree sexual assault count and to consecutive life without parole on the sexual abuse of a minor count. On April 17, 2012, Huckfeldt filed a timely notice of appeal asserting error in the district court's decisions to deny a continuance and admit uncharged misconduct evidence.

**DISCUSSION**

## A. Continuance

[¶11] We address first Huckfeldt's claim that the district court erred in denying his request for a continuance to allow time to locate a missing defense witness. "[T]he grant or denial of a motion for continuance is a discretionary ruling of the district court and, unless a clear showing of an abuse of discretion resulting in manifest injustice has been shown by the challenging party, we will not disturb that ruling." *Grady v. State*, 2008 WY 144, ¶ 18, 197 P.3d 722, 729 (Wyo. 2008) (citing *Sincock v. State*, 2003 WY 115, ¶ 25, 76 P.3d 323, 333-34 (Wyo. 2003); *Clearwater v. State*, 2 P.3d 548, 553 (Wyo. 2000)). This Court's review for an abuse of discretion is highly dependent on the facts and circumstances of the individual case, and our primary consideration is the reasonableness of the district court's decision. *Id.*

[¶12] Continuances based upon the unavailability of evidence are governed by Wyo. Stat. Ann. § 1-9-101. The statute requires that a motion to postpone a trial be supported by an affidavit showing the materiality of the evidence, that due diligence has been used to obtain the evidence, and where the evidence may be found. Wyo. Stat. Ann. § 1-9-101(a). With respect to a missing witness, the statute further provides:

> (b) If the postponement is because of an absent witness, the affidavit shall also state:
>
> (i) Where the witness resides, if known;
>
> (ii) The probability of procuring the testimony within a reasonable time;
>
> (iii) That absence of the witness was not procured by the act or connivance of the party seeking the postponement, nor by others at his request or with his knowledge or consent;

4

> (iv) The facts the witness is expected to prove and that affiant believes the facts as stated to be true; and

> (v) Such facts cannot be proven by any other witness whose testimony can be as readily procured.

Wyo. Stat. Ann. § 1-9-101 (LexisNexis 2011).

[¶13] Huckfeldt requested a continuance to allow time to locate EH, HG's estranged husband, asserting that EH would provide important impeachment testimony. In support of its continuance, the defense presented the testimony of its investigator. The investigator testified that EH was a fugitive and described his efforts to locate EH. He also addressed the probability that he could find EH within a reasonable time: "Well, I'm not sure what the definition of reasonable time is, but – I really don't know. I don't know how long it would take to find him. I think there are other avenues."

[¶14] The investigator also summarized EH's expected testimony, which he based upon his review of a law enforcement interview of EH concerning HG's reported rape. The investigator stated that EH would testify that while HG did tell him she was raped by Huckfeldt, the details of the account she gave EH were different from those being presently reported by HG. Specifically, EH would testify that HG told him she was raped when she was sixteen, not just before her sixteenth birthday, and HG told him it happened on a fishing boat, not in an ice fishing hut. The investigator stated that EH would further testify that he did not know who to believe because HG is a liar.

[¶15] We find no abuse of discretion in the district court's denial of the continuance motion. First, given the investigator's testimony concerning the prospects of finding EH, the district court correctly found that Huckfeldt failed to establish that EH could be located and his testimony procured within a reasonable time. This was an acknowledged difficulty that was even further compounded by EH's status as a fugitive. *See*, L.S. Tellier, Annotation, *Right of accused to continuance because of absence of witness who is fugitive from justice*, 42 A.L.R.2d 1229 (1955), § 1[b] ("[T]he cases are in almost universal accord that denial of an accused's motion for a continuance because of the absence of a witness who is a fugitive from justice is not an abuse of discretion.").

[¶16] Second, the district court correctly concluded that the unavailable testimony lacked materiality. When EH's statement to law enforcement is considered in its entirety, his potential testimony is simply not compelling. After the investigator testified concerning the expected testimony of EH, the prosecutor played the audio recording of the EH law enforcement interview for the court. On cross examination, the investigator then conceded that EH did not in fact attribute his belief that the rape occurred on a boat to something that HG had told him. He further agreed that EH stated that the rape could have taken place on an ice fishing trip and that EH concluded, "Honestly, I don't know."

5

Finally, the investigator agreed that when EH stated that HG lies, he qualified that statement by stating that she lies about "mostly petty stuff."

[¶17] Based on this record, Huckfeldt has not shown that the district court abused its discretion in denying the requested continuance, or that the denial resulted in a manifest injustice.

## B.    Rule 404(b) Uncharged Misconduct Evidence

[¶18] We turn next to Huckfeldt's claim that the district court erred in admitting evidence of his prior sexual assault of an eleven-year-old victim. We review the admission of uncharged misconduct evidence under W.R.E. 404(b) as follows:

> We review claims of error concerning the improper admission of W.R.E. 404(b) evidence for abuse of discretion and will not reverse the trial court's decision absent a clear abuse. *Thomas v. State*, 2006 WY 34, ¶ 10, 131 P.3d 348, 352 (Wyo. 2006). A trial court abuses its discretion when it could not have reasonably concluded as it did. *Id*. In this context, "reasonably" means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious. *Id.*
>
> *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206–07 (Wyo. 2007). Even if we determine that a district court abused its discretion in improperly allowing admission of uncharged misconduct evidence, and thus the evidence was admitted in error, we must also determine whether the error was prejudicial. *Solis v. State*, 981 P.2d 34, 36 (Wyo. 1999). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010).

*Magnus v. State*, 2013 WY 13, ¶ 15, 293 P.3d 459, 464-65 (Wyo. 2013) (quoting *Rolle v. State*, 2010 WY 100, ¶ 9, 236 P.3d 259, 264 (Wyo. 2010)).

[¶19] This Court has acknowledged the difficulties presented by uncharged misconduct evidence and has adopted a four-part test to guard against its misuse:

> [B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory

procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Vigil*, 926 P.2d at 357 (quoting *United States v. Herndon*, 982 F.2d 1411, 1414 (10th Cir. 1992)). We do not apply this test on appeal; rather, it is intended to be conducted by the trial court. *Beintema v. State*, 936 P.2d 1221, 1224 (Wyo. 1997). Our role is to determine whether admission of the evidence was error. *Id.*; *Spencer v. State*, 925 P.2d 994, 997 (Wyo. 1996).

*Magnus*, ¶ 16, 293 P.3d at 465 (quoting *Baldes v. State*, 2012 WY 67, ¶ 16, 276 P.3d 386, 390 (Wyo. 2012)).

[¶20]  To ensure that the probative value of uncharged misconduct evidence is properly gauged against its potential for unfair prejudice, a district court must weigh several factors in determining the admissibility of the evidence.  With respect to the probative value of the evidence, a court must consider:

> 1.  How clear is it that the defendant committed the prior bad act?
>
> 2.  Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
>
> 3.  Is other evidence available?
>
> 4.  Is the evidence unnecessarily cumulative?
>
> 5.  How much time has elapsed between the charged crime and the prior bad act?

*Wease v. State*, 2007 WY 176, ¶ 54, 170 P.3d 94, 112 (Wyo. 2007) (quoting *Rigler v. State*, 941 P.2d 734, 737 n.1 (Wyo. 1997)); *see also Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002).  With respect to the evidence's potential for unfair prejudice, a court must consider:

> 1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

7

2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.

3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Wease*, ¶ 54, 170 P.3d at 112 (quoting *Rigler*, 941 P.2d at 737 n.1); *see also Gleason*, ¶ 27, 57 P.3d at 342-43.

[¶21] A district court is not required to make express findings on each of the above-outlined factors. *Vigil v. State*, 2010 WY 15, ¶ 20, 224 P.3d 31, 38 (Wyo. 2010). "We only require that the record contain 'sufficient findings to support the trial court's conclusions.'" *Id*. (quoting *Williams v. State*, 2004 WY 117, ¶ 13, 99 P.3d 432, 442 (Wyo. 2004)).

[¶22] Huckfeldt does not contend that the district court failed to make the required *Gleason* findings. He instead challenges the court's analysis of the prejudicial impact of the uncharged misconduct evidence as superficial and asserts that the uncharged misconduct evidence was irrelevant and inflammatory. Huckfeldt argues:

The analysis of the district court is superficial at best. Here we have an 11 year old victim who was much more vulnerable than a 15 or 16 year old adolescent. She was subjected to a brutal and violent rape by Mr. Huckfeldt. Any juror who heard the testimony of CD would be absolutely revolted by the crime. It would not be surprising that a juror

would wonder why Mr. Huckfeldt is even out of custody after committing such an egregious offense. It would be expected, and a natural response to the evidence, jurors would consider Mr. Huckfeldt to be a danger to the local community and a threat to children in Sweetwater County. Admitting such inflammatory and irrelevant evidence amounted to a directed verdict against Mr. Huckfeldt.

[¶23] We disagree that the uncharged misconduct evidence admitted in this case was irrelevant or that the district court's analysis of its prejudicial impact was lacking. With respect to the probative value of the evidence, the State offered the evidence to show motive, intent, and knowledge, and to disprove fabrication. These facts were certainly in dispute given that in his statement to law enforcement, Huckfeldt accused HG of fabricating her rape allegation and stated his firm conviction that "you don't play with your kids." Moreover, this Court has on numerous occasions held that evidence of similar sexual misconduct is relevant and admissible to prove motive and intent. *See Wease*, ¶ 51, 170 P.3d at 110-111 (citing cases); *Hart v. State*, 2002 WY 163, ¶ 10, 57 P.3d 348, 353 (Wyo. 2002); *Gleason*, ¶ 19, 57 P.3d at 340.

[¶24] With respect to the prejudicial impact of the uncharged misconduct evidence, the district court made the following findings relevant to Huckfeldt's allegation of error:

> 1) The reprehensible nature of the prior bad act.
> The prior bad act is no more reprehensible than the charged crimes; therefore, it is not likely a jury would be tempted to punish Defendant for the prior bad act based on its reprehensible nature.
>
> 2) The sympathetic character of the alleged victim of the prior bad act.
> The victim in the prior bad act was approximately 11 years old, a minor younger than both HG & KA. There is a chance that based on the younger age of the victim in the prior bad act the jury may view that victim as especially vulnerable or more vulnerable than the alleged victims in the charged crimes; therefore, there is a higher likelihood the jury would be tempted to punish Defendant for the prior bad act based on the sympathetic character of the victim. However, this likelihood is mitigated somewhat because Defendant was convicted for the prior bad act.
>
> . . . .

9

4)     The comparative enormity of the charged crime and the prior bad act.

        The prior bad act is no more serious than the charged conduct; therefore, the introduction of the prior bad act is not likely to place Defendant in a different and unfavorable light.

[¶25] The record supports the district court's prejudice analysis and its decision to admit the uncharged misconduct evidence. CD, the victim of Huckfeldt's prior sexual assault, was twenty-nine years old when she testified in the present case. She testified that when she was eleven years old, Huckfeldt, then her mother's boyfriend, grabbed her by her hair, threatened her, and forced her to engage in oral sex and sexual intercourse. The assault against CD was, as Huckfeldt argues, brutal and violent. As is evident from our earlier recitation of HG's testimony, however, the assault the jury in this case heard described by HG was likewise brutal and violent. Additionally, the district court adequately evaluated and weighed the relative vulnerability of the victims. Although CD was younger at the time of her attack, HG was small in stature. At the time of trial, she stood approximately five-feet, four inches in height, and weighed only ninety-five pounds. And, she was in an isolated location, alone with and dependent on the care of her stepfather. Both victims were vulnerable, and as the court noted in its analysis, Huckfeldt had already been convicted and served a prison sentence for his crimes against CD, mitigating any temptation the jury might feel to punish him for his prior conduct.

[¶26] Finally, in arguing the prejudice that resulted from the district court's admission of the uncharged misconduct evidence, Huckfeldt suggests that the limiting instruction the district court gave did not adequately caution the jury against an emotional reaction to the evidence. Huckfeldt did not object to the court's limiting instruction below and has not presented a plain error analysis on appeal. We therefore decline to address the issue. *See Vigil*, ¶ 21, 224 P.3d at 39; *Causey v. State*, 2009 WY 111, ¶ 19, 215 P.3d 287, 293 (Wyo. 2009).

## CONCLUSION

[¶27] We find no abuse of discretion in the district court's denial of Huckfeldt's continuance motion or its admission of uncharged misconduct evidence. Affirmed.