DAVIS, Chief Justice.
*619 [¶1] A jury found William Mayhew guilty of four counts of third-degree sexual assault related to his abuse of three minors during the 1990s and early 2000s. On appeal, Mr. Mayhew claims the district court erred in admitting photos and videos as other acts evidence under W.R.E. 404(b). He also contends that the district court abused its discretion in admitting evidence not identified in the State's pretrial disclosure and without proper foundation. We affirm.
ISSUES
[¶2] Mr. Mayhew presents two issues on appeal, which he frames as follows:
I. Did the trial court abuse its discretion by admitting evidence pursuant to W.R.E. 404(b) that did not fit an acceptable purpose and was used solely to prove the character of the Defendant?
II. Did the trial court abuse its discretion by admitting evidence not listed in the pretrial proceedings and without proper foundation?
FACTS
[¶3] William Mayhew lived near his grown daughter and her family in Sheridan, Wyoming, starting in the early 1990s. She and her husband had three daughters: HS, born in 1989; MT, born in 1992; and ST, born in 1997. In May 2015, MT revealed to her aunt that Mr. Mayhew, her grandfather, had sexually abused her and her sisters. MT's aunt informed MT's father, and he reported the allegations to law enforcement.
[¶4] Following an investigation, the State charged Mr. Mayhew with five counts of third-degree sexual assault: two counts for acts against HS; one count each for acts against MT and ST; and one count for acts against AR, a boy who grew up in Mr. Mayhew's neighborhood.[1] Before trial, Mr. Mayhew requested notice of the State's intent to submit other acts evidence under W.R.E. 404(b). In response, the State provided its Rule 404(b) notice, followed by three addenda, which identified the following other acts evidence the State intended to introduce:
--testimony by the director of a children's program at a local church, along with related emails, concerning the church's 2012 decision to terminate Mr. Mayhew as a Sunday school instructor for violating the church's policy against adults transporting children alone;
--testimony by a former director of the Joy Junction Children's Ministry concerning a 2009 complaint from the mother of a five-year-old girl that when she picked up her daughter from a swimming pool activity, she saw that Mr. Mayhew had her daughter's legs wrapped around him;
--testimony that arresting officers found a box at Mr. Mayhew's home that contained photos of young girls who were Joy Junction participants;
--photos and videos of young girls taken by Mr. Mayhew while participating in children's programs;
--testimony by Mr. Mayhew's wife's younger sister that in 1962, when she was ten years old, Mr. Mayhew pinned her against a pillar and rubbed his hands on her crotch area, and a few weeks later took her to a cabin in the woods where he fondled her, pinned her down, and tried to remove her underwear;
--testimony that in law enforcement's examination of Mr. Mayhew's computers, it discovered the use of programs and techniques used in the child exploitive community, twenty-four media files of children classified as closely related to child erotica, and 5,785 files that contained children;
--testimony by Mr. Mayhew's daughter that he sexually abused her beginning when she was four years old and continuing until she was about twelve years old, including five specific incidents during that period; and *620 --testimony by Mr. Mayhew's wife that after the local church terminated him from Sunday school activities, she saw him burn a collection of photos in their fireplace, and testimony by HS that she also witnessed the burning of photos, which her grandmother told her were from Joy Junction.
[¶5] The State offered the other acts evidence for the purposes of showing Mr. Mayhew's motive, intent, and lack of mistake or accident. Mr. Mayhew objected to the evidence, and on December 5, 2017, the district court heard argument on the State's notice. During the hearing, the State narrowed its proffered other acts evidence and sought admission only of Mr. Mayhew's daughter's testimony and the photos and videos of young girls Mr. Mayhew took while participating in youth activity programs.
[¶6] The district court issued an oral ruling, in which it applied the Rule 404(b) -required factors, which was followed by a summary written order that found the proffered evidence admissible. The court found that the evidence was relevant to Mr. Mayhew's motive and intent, and that its probative value was not substantially outweighed by its potential for unfair prejudice.
[¶7] At trial, the victims of the charged conduct described Mr. Mayhew's sexual abuse.[2] HS testified that Mr. Mayhew sexually abused her from the age of five until she was about ten or eleven years old. She testified that on multiple occasions, he would have her lie on his bed, face down and clothed, and he would lie on top of her, bouncing up and down. He called this the "smooshing game." On other occasions, Mr. Mayhew had her apply lotion to his erect penis. He also on multiple occasions directed HS to lie on his bed, unclothed from the waist down, spread her legs, and touch herself, with him sometimes moving her hands when she "wasn't doing it right." HS also described occasions when Mr. Mayhew would instruct her to use a vibrating massager on her vagina while he masturbated, would shower with her and wash her entire body, and would fondle her between her legs while driving with her in his truck.
[¶8] During HS's testimony, a letter Mr. Mayhew had written to HS after she confronted him with her abuse allegations was admitted into evidence without objection. The letter read, with the emphasis in the typed original:
I have tried to write a letter to you this past year (some several pages long) but the words just didn't seem right. At times I felt I was not worthy to even communicate with you.
What I found out during this time is I am not a person of words. Because of my rapid deteriorating health and your position of me not being able to talk to you, this appears to be the best communication avenue for me right now.
I just wanted you to know from my heart and soul I am truly sorry for the verbal and physical abuse I have done to you. It was wrong, wrong. Please, please forgive me, please.
I am also asking that during my last days that you visit often and allow my great granddaughter and great grandson [to] be around me and your grandma together.
[¶9] MT testified that Mr. Mayhew began sexually abusing her when she was five or six years old and that the abuse continued until sometime before she reached puberty. She described three specific memories of the abuse. The first incident occurred during a game of dress-up when she was five years old. Mr. Mayhew had her lie on his bed and use a vibrating massager on her genital area.[3] On another occasion, Mr. Mayhew played a blindfold game with MT that required her to guess the identity of objects while blindfolded, one of which was his erect *621 penis. The third incident involved a game that Mr. Mayhew called "squish it." During that game, he had MT lie on the floor, face up and clothed, and he would lie on top of her. MT could feel his erect penis when he did this.
[¶10] AR testified to a single incident of abuse that occurred during the summer of 1995, when he was about ten years old. AR lived near the Mayhews and would occasionally visit to play with their dog. On one such occasion, Mr. Mayhew brought out a vibrating massager and encouraged AR to use it on himself. AR testified that Mr. Mayhew initially showed AR how to use it on his leg and then he encouraged him to move the vibrator closer to his crotch area. Mr. Mayhew then put his hand on AR's crotch outside his pants to show him where to place the vibrator, while saying "Doesn't that feel good?" AR felt panicky, fled the Mayhew home, and reported the incident to his father.
[¶11] In addition to the victims' testimony concerning the charged conduct, the State presented the other acts evidence the district court had ruled admissible. Mr. Mayhew's daughter testified that from the time she was four or five years old, he would make her wash his erect penis while he took baths. She also testified to specific incidents of abuse, including an incident when she was five or six, during which Mr. Mayhew told her, her sister, and a neighborhood friend they were going to play doctor and instructed them to get in a closet. He then called each child out individually, and when he called her out, he told her to take off her clothes and lie down, and then proceeded to examine her body, including her vagina, visually and with his hands.
[¶12] The daughter described another incident that occurred during that same timeframe, in which she wet her pants and Mr. Mayhew ordered her to remove her clothes in front of her brother and sister and lie on the floor. He then put her in a diaper, touching her vagina while doing so, and made her wear nothing but the diaper.
[¶13] The final incident the daughter testified to occurred when she was in the third or fourth grade. Mr. Mayhew would initiate games of hide and seek with the children and during one such game, he had her sit on his lap when she found him, and she could feel his erect penis.
[¶14] From the photos and videos the district court had ruled admissible, nine photos and six videos were offered and admitted into evidence. The photos were of young girls, most wearing swimming suits, and a few in shorts or skirts, with a focus on the girls' lower bodies and genital areas. Of the six videos admitted into evidence, four of them recorded clothed young girls straddling a table, with Mr. Mayhew encouraging them to scoot down the table without the use of their hands, a maneuver that required the girls to repeatedly thrust their hips. Another video showed a young girl in a skirt playing on monkey bars, and the final video was of a young girl in a park, wearing a skirt and sitting in a way that showed her underwear, with the recording focused on her underwear-covered genital area.
[¶15] Mr. Mayhew testified in his defense. As to the allegations contained in the other acts testimony of his daughter, he testified that he was a heavy drinker during his daughter's youth, and he could not recall that period of time. Although he could not recall that period, he testified as follows concerning her allegation that he made her wash his erect penis when he bathed:
A. One of the elements that stands out to me has to do with the male private part. And I'm sorry, but I can't say the name. Private part. I hope you understand what I'm talking about. That situation that stands out to me deals with the use of soap on my private part when it's stiff. For all the men in this room here -
[Objection sustained.]
A. My experience has been that it hurts, it hurts because the soap is - back then all the soaps around were alkalin[e] based and - it may be like the female private parts, using that alcohol-based soaps and that to clean is okay, but not for sensitive areas. And for the use of that is - I wouldn't have allowed that. I just wouldn't allow that. It hurts.
[¶16] Concerning his daughter's allegation that she felt Mr. Mayhew's erect penis when *622 he had her sit on his lap during a game of hide-and-seek, Mr. Mayhew testified:
That's an interesting one. We lived on Gilbert. And one of the fun things we always did was we had fun with the hide and seek. It's a good thing for Dad. And one of the instances indicated here was that we had a - in the hide and seek there was a - if you'd understand, we had specific spots that we all liked to hide, because they were good spots to hide. And this particular one had the foundation and the furnace. And it was narrow, very narrow. In fact, for a 240-pound individual, it was a very tight squeeze to get in there, but it was a good spot to hide where there wasn't any lights.
That particular instance that was presented to the court is that spot. Because it's so narrow, there's no way - there's no way that anyone could sit on me because I couldn't sit because I'd have to stand up because it was so narrow. And so in that particular case, the closest that would come to that would be to sit on my knee. If you understand, if I'm sitting sideways hiding, that would the only way that somebody could be right with me, touching me, on me, would be to sit on my knee. Most of the time, obviously, I would stand up or kneel, but not - there's no way to lay down. No way to sit on my rear and have somebody sit on me.
[¶17] Concerning the photos of children in his possession, Mr. Mayhew testified:
The purpose of that was really simple. The families involved were families that, like you and me, we like pictures. We love pictures and especially of our family. And one of the things that we did was we took pictures, not only I, but other teachers, and we did something very simple. Without charge but under love, we went ahead and we did the pictures, shots, made prints, and the kids could take them home. The children could take them home. And response back with that, as you heard here this morning that parents received them and it was a great item that was used for our ministry that we had ....
[¶18] Mr. Mayhew provided no testimony on direct examination concerning the videos. On cross-examination, he agreed that he took the videos, that he did not have the capability to make or provide copies of those to parents, and that he did not share them with parents of the children in the videos.
[¶19] With respect to the charged conduct, Mr. Mayhew denied that he inappropriately touched his granddaughters or AR with his hand or with a vibrator or that he had any sexual contact with his granddaughters or AR. Concerning the incident with AR, he admitted that AR was present on an occasion when he was using a vibrating massager on his own leg, but he denied using the massager in a sexual manner or touching AR. He testified:
A. As I was using the massager, [AR] said, "Give me the massager." And he says, "I'm tough."
And I said, "Well, what do you mean by 'tough?' "
He says, "I'm tough."
I says, "Okay. Let's see how tough you are." And I said what I want you to do is - and I pointed to the side of his head. And I said, "I want you to go with the vibrator from your head down to your ankle, and I'd like to have you do it two times, and we'll see how tough you are."
Q. And then what happened?
A. Well, he got on his knees and did exactly that, went from there but only down to his knees, of course, and did it twice. And I says - I don't know what he said, but I said, "You are tough."
[¶20] Concerning the letter of apology he wrote to HS, Mr. Mayhew testified:
Q. ... And you also admit that you did write that letter to [HS]; it's your apology?
A. For the verbal and physical abuse. Nothing said about sexual.
[¶21] The jury found Mr. Mayhew guilty of four counts of third-degree sexual assault, and the district court sentenced him to consecutive prison terms totaling twenty-eight to thirty-five years. Mr. Mayhew timely appealed his conviction to this Court.
*623 DISCUSSION
[¶22] Mr. Mayhew contends the nine photos and six videos were impermissible character evidence and that the district court therefore erred in admitting them under Rule 404(b).[4] He further claims the district court erred in admitting the massaging vibrator into evidence. We find no abuse of discretion in either ruling.
A. Other Acts Evidence
1. Standard of Review
[¶23] Mr. Mayhew preserved his objection when he filed his pretrial demand for notice of other acts evidence, and we therefore review the district court's decision for an abuse of discretion. Swett v. State , 2018 WY 144, ¶ 11, 431 P.3d 1135, 1140 (Wyo. 2018).
A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion.
Id. (quoting In re GAC , 2017 WY 65, ¶ 32, 396 P.3d 411, 419 (Wyo. 2017) ).
2. Rule 404(b) -Required Analysis
[¶24] Rule 404(b) governs the admissibility of other acts evidence. It provides:
(b) Other crimes, wrongs, or acts . - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
W.R.E. 404(b).
[¶25] Our precedent mandates a procedure that a trial court must follow and factors that it must consider in ruling on the admissibility of other acts evidence. Moser v. State , 2018 WY 12, ¶¶ 21-23, 409 P.3d 1236, 1243-44 (Wyo. 2018). Generally,
(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. Vigil [v. State ], 926 P.2d [351] at 357 [ (Wyo. 1996) ] (quoting United States v. Herndon , 982 F.2d 1411, 1414 (10th Cir. 1992) ).
Moser , ¶ 21, 409 P.3d at 1243-44 (quoting Griggs v. State , 2016 WY 16, ¶ 128, 367 P.3d 1108, 1143 (Wyo. 2016) ).
[¶26] In determining the probative value of other acts evidence and weighing that against its potential for unfair prejudice, a trial court is to use the following analysis:
In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:
1. How clear is it that the defendant committed the prior bad act?
2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
3. Is other evidence available?
4. Is the evidence unnecessarily cumulative?
5. How much time has elapsed between the charged crime and the prior bad act?
... The trial court should [then] weigh [the following] factors against the probative value of the evidence:
1. The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant *624 for the prior act if the victim was especially vulnerable.
3. The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.
Moser , ¶ 22, 409 P.3d at 1244 (quoting Griggs , ¶ 131, 367 P.3d at 1144 ).
[¶27] This analysis is intended to be conducted by the trial court, and we do not apply it anew on appeal. Garrison v. State , 2018 WY 9, ¶ 20, 409 P.3d 1209, 1215 (Wyo. 2018) ; Griggs , ¶ 128, 367 P.3d at 1143. Our role is to determine whether the trial court abused its discretion in considering the required factors. Griggs , ¶ 128, 367 P.3d at 1143. In that regard, the trial court must provide an adequate record for this Court's review, but it is not required to make express findings on each factor. Moser , ¶ 23, 409 P.3d at 1244 (quoting Griggs , ¶ 131, 367 P.3d at 1144 ).
3. District Court's Rule 404(b) Analysis
[¶28] The purpose for which the State offered the photos and videos provided the context for the district court's analysis, and we therefore begin our review by setting forth the Rule 404(b) purpose the State argued to the district court. See Swett , ¶ 38, 431 P.3d at 1145-46 (quoting Hart v. State , 2002 WY 163, ¶ 16, 57 P.3d 348, 355 (Wyo. 2002) ) (emphasizing need for specificity in State's proffer and observing "relevance and probativeness cannot be determined without knowing what it is the evidence is meant to prove"). In its Rule 404(b) notice, the State identified motive, intent, and lack of mistake or accident as the purposes for its proffered evidence, but its focus during the Rule 404(b) hearing was on motive. It argued:
In light of the fact that we don't have DNA and we don't have an eyewitness and we don't have some of those other things that we use oftentimes to prove crimes, it's a credibility contest. And so if he's pleading not guilty, it's because he's saying, "They're fabricating what happened and it's not true. I didn't do this. I wouldn't do this. I wouldn't do this to my granddaughters. I'm not attracted to young individuals." And so this type of evidence goes to support that somebody who - and I'm going to quote from Elliott v. State and then Wease v. State is probably the more recent - well, even Mitchell cites to Elliott .
"Given this evidentiary conflict, a finder of fact would be extremely interested in other information that might be available to help resolve the ultimate issue. Evidence of motive would be such information. One who is a paraphiliac, whose preference or addiction for unusual sexual practices occurs in the form of pedophilia, could well be recognized as having a motive to commit the acts complained of by the victim. The fact finder could infer from the acts complained of by the older sister that Elliott was so motivated. Such information would be helpful to any professional in determining whether Elliott," the defendant, "was so afflicted."
So in that case the prior bad act was admissible for the purpose of proving motive that this type of incest involves aberrant sexual behavior. It's a type of sexual deviancy that is difficult to understand. Therefore, our trier of fact might wonder what would motivate the accused to behave in such a bizarre manner. The evidence of prior sexual acts was then probative under motive because of unusual sexual behavior involved.
That's what we have here. We have unusual sexual behavior involved. We have *625 three out of the four victims being family members, and young girls at that. And a jury is going to have a hard time wrapping their mind around that. And this 404(b) evidence speaks to his motive. Especially with respect to the videos and the photos. It's his manipulation of those girls at Joy Junction and his fixation on them that could be seen maybe by somebody like you as girls just shimmying down the table, but it's at his direction that they're asked not to use their hand[s] and thrust forwards towards him. That's his fixation on unusual conduct for a prurient reason. And the jury would be able to take that evidence and see that as his motive, sexual deviancy, his attraction to young individuals as helping them resolve the ultimate issue in this case.
[¶29] In response, and in applying the required factors to the photos and videos, the district court made the following observations:[5]
The Court is required to follow the mandatory procedure for testing the admissibility. The evidence must be offered for a proper purpose. The State argues that it is intent and motive and those are proper purposes. The evidence must be relevant, and under 401, evidence having tendency to make the existence of any fact more probable or less probable is relevant. It's a very low hurdle, if you will. I find that this evidence is relevant.
The next element is, "The probative value of the evidence is not [to] be substantially outweighed by its potential for unfair prejudice." And that's really the issue here, and they've given some additional questions and guidance to apply that, and I'll be talking about that in a moment.
Then, finally, "Upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose," such as a limiting instruction is appropriate. And I certainly, if I allow this evidence in, I would allow the defense to offer a limiting instruction and would give a limiting instruction in some fashion. And we'll get to that if we need to at a later time.
Further, "The record must reflect that the trial court required the State not only to identify the proper purpose for which uncharged misconduct evidence is being offered, but also to explain how or why it is probative, and why it is more probative than prejudicial," and "In determining the probative value," "the trial court should consider the following factors: ....
* * * *
... "Is the evidence unnecessarily cumulative?" And here's where I try - and I don't know that I did it very well - to articulate, particularly with respect to the videos and the photographs, clearly, they're cumulative in the context of there are several of them. But that's what makes the probative value. So they are not unnecessarily cumulative. They are necessarily cumulative, because one of these in and of itself is sort of pretty meaningless. But the collective value of them is what makes them probative. So I don't think this - with respect to the videos and photographs, that they are unnecessarily cumulative. In fact, I specifically find that they are necessarily cumulative.
And finally, "How much time has lapsed between the charged crime and the prior bad act?" And, here again, we have a significant distinction between the videos and the photos. They were relatively recent in time. And I don't recall specifically - I imagine the foundation of delay as to when they were taken, but they were relatively recent in time. But that is complicated because the allegations in this case are quite remote in time. ...
[The] Supreme Court has further articulated with respect to the balancing probative versus prejudice, there are additional factors that should be weighed or addressed. And one is the reprehensive nature of the prior bad act, the more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
*626 Taking pictures of young girls in a public setting is not reprehensible. I don't find that that is - I find that favorable for the State. ...
Two, the sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable. Here the photographs, to the extent that they are victims, they are vulnerable. The fact that many of these videos were taken at our community's [ ] and swimming pool jumps out at me. Being a member of this community, my children played at that pool, my children played at the [ ], and to think that they were being photographed and viewed in this way is alarming. ...
I think that when children are victims, even now children [who] are grown adults, and certainly the children in the videos and photographs, they are sympathetic. ...
The next factor is the similarity between the charged crime and the prior act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference, that if the defendant did it once he probably did it again. ...
With respect to that, taking pictures of young girls at the [ ] and the swimming pool or other public areas is substantially different than acting on and physically molesting a family member. ...
The comparative enormity of the charged crime versus the video and the photographs I think is just the opposite of what the concern is here. Taking pictures of young girls in and of itself is not nearly as bad as molesting young family members. ... So I don't think this is sort of trying to use a sex offense for [a] jaywalking charge and that the sex offense is so much outweighed by the actual charge of jaywalking that it shouldn't come in. ...
The next factor is the comparative relevance of the prior bad act with proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is with legitimate inference permitted by 404(b). This factor, I think, plays right on point of the struggle that the Court is facing. One innocent picture of a child in a swimming suit is one thing. A collection of them is another thing. And it is really this - I can't think of a better word than what came to my mind in chambers when I looked at this. This is creepy. This is just creepy. And in that context, it's more character than it is probative on the allegations made of physical offense that happened many years ago. And I liken this to the assessment of having possession of child pornography of something that has been generated far afield and is viewed through some kind of electrons that flow through a wire to me is a different kind of crime than having a studio in which you are taking pornographic pictures of children.
People disagree with me, and I appreciate that. Seems like there's a physical line that's crossed. And that kind of fits this. The taking [of] children's picture in a public setting really is not that relevant to acting on and physically molesting your granddaughters. So it is kind of this - just kind of creepiness about it to have this collection of pictures. But it's kind of different than actually acting on, and the allegations are that he molested his grandchildren. I'm having a hard time articulating, but this factor is one that I focus on. And I think with respect to the pictures and video, it is - it's more favorable for the exclusion of the evidence ....
And, finally, whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment from the prior bad act. Clearly, this evidence, all of it did not result in a conviction. I don't even know if it's illegal. I mean, prior acts or subsequent acts don't have to be criminal acts of conduct. So it doesn't have to result in a conviction. And taking a picture of somebody in a public setting, a little girl in a public setting [that] happens to be a provocative way by just the nature of catching that photograph at the certain time. I don't know that it's illegal. So I wouldn't expect a conviction to come from that. So I think that factor with respect to the photos and videos is favorable for the inclusion of the evidence. ...
*627 So, ultimately, the Court really has to go back to the definition of 403, and that is, taking all these considerations, the probative value must not be substantially outweighed by its potential for unfair prejudice, substantial[ly] outweigh and unfairness. And in the Court's discretion, after considering all of this and contemplating extensively, finds that this evidence is not substantially outweighed by unfair prejudice and it is admissible. So I am allowing the evidence to be admitted, including the photographs, the videos, and the allegations made by the daughter.
4. Review of District Court Analysis
[¶30] The district court's written order, which summarized its oral findings and conclusions, stated that the photos and videos were admissible for the purposes of showing motive and intent. The focus of the court's verbal ruling, particularly in the context of the State's argument, was on motive. We will therefore limit our consideration to whether the district court abused its discretion in finding the evidence relevant to motive. See Swett , ¶ 39, 431 P.3d at 1146 (noting motive is different from intent).
[¶31] "Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." Swett , ¶ 39, 431 P.3d at 1146 (quoting Brown v. State , 736 P.2d 1110, 1112-13 (Wyo. 1987) ). Although motive is not an element of any charged crime, it is an intermediate fact that the prosecution is permitted to prove. Mitchell v. State , 865 P.2d 591, 596-97 (Wyo. 1993) (citing Edward J. Imwinkelried, Uncharged Misconduct Evidence § 3.15 at 35-36 (1992 & Supp. 1993) ). In child sexual abuse cases in particular, we have consistently upheld the admission of other acts evidence when the accused denies that the charged conduct occurred.
An example of the proper use of "motive" evidence is found in child sexual abuse cases. In Elliott v. State , 600 P.2d 1044, 1048-49 (Wyo. 1979), evidence that the defendant had previously attempted to sexually abuse the victim's older sister demonstrated the defendant had motive to sexually abuse the victim because of his "preference or addiction for unusual sexual practices ... in the form of pedophilia." "This Court has consistently held that 'sexual behavior with a defendant's minor children, adopted children, or step-children is unusual sexual behavior permitting admission of uncharged misconduct evidence to prove motive when the accused denies that the charged conduct ever occurred.' " McDowell v. State , 2014 WY 21, ¶ 28, 318 P.3d 352, 361 (Wyo. 2014) (quoting Brower v. State , 1 P.3d 1210, 1214 (Wyo. 2000) ). See also , Gleason [v. State , 2002 WY 161], ¶ 19, 57 P.3d [332] at 340-341 [ (Wyo. 2002) ] (collecting cases).
Swett , ¶ 40, 431 P.3d at 1146 ; see also Griggs , ¶ 131, 367 P.3d at 1143-44 (recognizing "motive to sexually abuse children" as proper use of other acts evidence).
[¶32] We have also recognized that evidence admitted under Rule 404(b) may be uncharged acts that occurred subsequent to the charged act, as is the case with the photos and videos here.
Before we discuss the specific bases for which the district court admitted the jail incident, we will address the timing of the two incidents. Evidence admitted under Rule 404(b) is often referred to as prior bad acts evidence because, in many cases, the other crime, wrong or act occurred before the charged crime. See, e.g. , Griggs , ¶ 131, 367 P.3d at 1144 ; McGinn v. State , 2015 WY 140, 361 P.3d 295 (Wyo. 2015). Here, though, the jail incident took place after the child abuse. The fact that the other misconduct happened after the charged crime does not affect its admissibility under Rule 404(b). The rule, itself, refers to "other" acts, rather than "prior" acts. We applied the rule in Garrison , ¶ 33, 409 P.3d at 1218-19, and affirmed the district court's decision allowing into evidence acts committed by Garrison after the charged act.
Swett , ¶ 22, 431 P.3d at 1142.
[¶33] Mr. Mayhew acknowledges this precedent, but he contends the district court's admission of the photos and videos as evidence of motive was flawed in two respects. First, Mr. Mayhew points to the fact that at *628 least some of the photos and recordings were made years after the charged conduct. He contends that this makes them irrelevant to the question of motive because motive must precede a criminal act. Second, he argues that the district court's reference to the "creepiness" of the photos and videos, and statements that the prosecutor made about them in closing argument, show that the evidence was used solely as character or "lifestyle" evidence. We disagree with both contentions.
[¶34] In support of his argument that the photos and videos are irrelevant to the question of motive because they were taken subsequent to the charged conduct, Mr. Mayhew points to Mitchell , where this Court observed that "[w]hile intent accompanies the actus reus, the motive comes into play before the actus reus." Mitchell , 865 P.2d at 597 (quoting Imwinkelried, supra , § 3.15 at 35-36). We of course agree that motive to commit a crime must exist before the crime is committed. It does not follow, however, that evidence of motive cannot be found in acts subsequent to the charged crime. As further explained in Mitchell :
Uncharged misconduct evidence offered to prove motive is found in two forms. [Imwinkelried, supra, § 3.15 at 36] "In one form * * * the act of uncharged misconduct supplies the motive for the charged crime." Id . A concrete example of this form is the defendant's committing murder to eliminate a witness to the defendant's uncharged misconduct. Id . at 39. The second form, which is the form with which we are concerned in this case, is described in this way:
[T]he act of uncharged misconduct evidences the motive; the motive again is the cause, the uncharged act is one effect, and the uncharged act tends to show the motive that produces the charge[d] act, the other effect. Both crimes are explainable as a result of the same motive.
Id . at 39.
Further explaining this second form, Professor Imwinkelried states:
The courts typically invoke this theory of relevance when the motive is in the nature of hostility, antipathy, hatred, or jealousy. When the evidence is offered to identify the defendant, the emotion must be directed at the victim or a defined class which included the victim. The prosecutor's case for admissibility is strongest when the sole object of the [emotion] is the victim. * * * However, the courts have also admitted evidence of acts evidencing [emotion] against a class which included the victim . * * * There must be some relationship between all the victims. Otherwise, the evidence would show only the defendant's general [emotional] nature and violate the prohibition in the first sentence of Rule 404(b).
Id . at 46.
Mitchell , 865 P.2d at 597 (brackets in original, emphasis added).
[¶35] In this case, both the charged and uncharged acts involved the same class of victims, prepubescent children. The photos and videos are of children unrelated to Mr. Mayhew and have sexual overtones in their focus on the children's genital areas and in Mr. Mayhew's directions to engage in a hip-thrusting activity. Given their content, we cannot say that it was unreasonable for the district court to agree with the State that the photos and videos reflect Mr. Mayhew's sexual preference for prepubescent children and were therefore probative evidence of his motive. See Swett , ¶ 40, 431 P.3d at 1146 (citing cases approving other acts evidence to show accused's "preference or addiction for unusual sexual practices ... in the form of pedophilia" as probative of motive to sexually abuse victim).
[¶36] In addition to being probative of Mr. Mayhew's motive, the photos and videos were also relevant because Mr. Mayhew denied any sexual contact with the victims of the charged conduct. Id . ; Brower v. State , 1 P.3d 1210, 1214 (Wyo. 2000) ("When the accused denies any wrongdoing, an evidentiary conflict exists between the victim and the accuser, and evidence of motive assists a jury in resolving the ultimate issue.").
[¶37] That the photos and videos were taken subsequent to the charged conduct *629 does not destroy their probative value. Under this form of motive evidence, the theory is that Mr. Mayhew's alleged sexual preference for prepubescent children caused both the charged and uncharged acts. With the premise being that both acts reflect the same motive, the order in which they occur is not important, though timing may certainly affect the weight of the evidence, as we have previously observed.
In Griswold v. State , 994 P.2d 920, 926 (Wyo.1999), we declined to set an arbitrary ten-year time limit for admissibility of uncharged misconduct evidence under W.R.E. 404(b), and reiterated the Britton [v. State , 845 P.2d 1374 (Wyo.1992) ] emphasis on the trial judge's discretion. We also stated that, rather than making testimony inadmissible, remoteness in time of the prior act may affect the weight of the evidence. Griswold , 994 P.2d at 926. See also People v. Douglas , 50 Cal.3d 468, 268 Cal.Rptr. 126, 149, 788 P.2d 640, 663 (1990), cert. denied , 498 U.S. 1110, 111 S.Ct. 1023, 112 L.Ed.2d 1105 (1991) ; Harp v. State , 518 N.E.2d 497, 500 (Ind.App.1988) ; and State v. Whitlow , 285 Mont. 430, 949 P.2d 239, 245 (1997). Remoteness in time renders the evidence inadmissible only if the remoteness is so great that the evidence has no value. State v. Martin , 279 Mont. 185, 926 P.2d 1380, 1386 (1996).
Hart , ¶ 23, 57 P.3d at 356.
[¶38] Hart addressed the timing of other acts in the context of prior acts, but we have used similar reasoning in considering subsequent acts. In Garrison , the defendant was charged with first degree arson for the destruction of his estranged wife's mobile home. Garrison , ¶ 6, 409 P.3d at 1211. The district court admitted a substantial amount of other acts evidence including a number of threatening telephone calls the defendant made to his wife after the fire and in violation of a restraining order. Id. ¶ 7, 409 P.3d at 1212. The purpose for which the district court admitted the evidence was to show the relationship of the parties, which it found relevant to the disputed elements of malice and identity, as well as the disputed issue of motive. Id. ¶ 25, 409 P.3d at 1216. We upheld the admission of the subsequent act telephone calls.
We reach the same conclusion with respect to the admission of the final category of 404(b) evidence-the incidents that occurred after the fire. All three of those incidents refer to telephone calls made on different days by Mr. Garrison in violation of the protective order (incidents 8, 9, and 10). See supra ¶ 7. Undoubtedly these acts are less relevant than those before and leading up to the arson. However, the district court found that these incidents were relevant for the purpose of illustrating the relationship between the parties. Mr. Garrison cites no caselaw or other authority that would support a contrary conclusion. Further, we do not find that Mr. Garrison has established that this evidence "was extremely inflammatory or introduced for the purpose of inflaming the jury." Proffit [v. State ], 2008 WY 102, ¶ 16, 191 P.3d [963] at 969 [ (Wyo. 2008) ] (quoting Law [v. State ], 2004 WY 111, ¶ 15, 98 P.3d [181] at 187 [ (Wyo. 2004) ] ). The district court reasonably concluded that the evidence was not unfairly prejudicial and, thus, did not abuse its discretion in admitting evidence of Mr. Garrison's telephone calls made to Ms. Hendricks after the fire.
Garrison , ¶ 33, 409 P.3d at 1218-19.
[¶39] Because the photos and videos were of prepubescent children unrelated to Mr. Mayhew and had sexual overtones, and because evidence of Mr. Mayhew's sexual preference for prepubescent children was probative of his motive to commit the charged acts, we cannot say that the district court was without a legitimate basis to find the photos and videos relevant, regardless of whether they were taken before or after the charged conduct. We therefore find no abuse of discretion in the district court's ruling that the photos and videos were relevant.[6]
*630 [¶40] We turn then to Mr. Mayhew's contention that the district court's reference to the "creepiness" of his photo collection, and the prosecutor's comments during closing, show that the evidence is purely lifestyle or character evidence we have ruled inadmissible. We again disagree.
[¶41] In support of his argument that the photos and videos were no more than inadmissible lifestyle evidence, Mr. Mayhew cites Wilde v. State , 2003 WY 93, 74 P.3d 699 (Wyo. 2003). In Wilde , the defendant was charged with first degree sexual assault, and the trial court admitted other acts evidence including photos of Wilde's groin, penis, scrotum, and anus, showing piercings and tattoos on those parts of his anatomy, and testimony that he was in possession of "sexual cartoons, sexually explicit photographs, photographs of pierced female genitalia, a wooden paddle, some motorcycle goggles, a set of fur-lined handcuffs, two containers containing Kama Sutra Oil of Love, some vanilla cream, some raspberry kiss cream, a black leather whipping strap, black nylon eye cover mask, pornographic material, men's and women's underwear, and sex toys." Wilde , ¶¶ 1, 24, 74 P.3d at 701, 710. We found this evidence to be irrelevant "lifestyle" evidence and its admission to be reversible error because it permeated the trial. Id. ¶ 25, 74 P.3d at 710.
[¶42] Mr. Mayhew's reliance on Wilde is misplaced. In Wilde , the defendant was charged with the forcible rape of a minor, and no connection was made between the defendant's body piercings and tattoos, and his possession of legal pornography and other sexual aids, and his act of forcible rape. Id. ¶¶ 5, 23-25, 74 P.3d at 702, 710. In contrast, in this case, the photos and videos reflect Mr. Mayhew's sexual preference for prepubescent children and were thus probative of his motive for committing the charged acts of sexual assault.
[¶43] We likewise reject Mr. Mayhew's claim that the prosecutor's closing argument illustrates that the evidence was used as impermissible character evidence. In so arguing, Mr. Mayhew points to the prosecutor's statement that "[t]his is a man with a sexual affliction for the young. Those were his trophies to view at his pleasure, for his pleasure, over and over and over again." We disagree that this reflects a purely character argument divorced from motive. While it was perhaps not as artfully or clearly put as it could have been, the prosecutor was arguing *631 Mr. Mayhew's sexual preference for children, which was his alleged motive for the charged conduct. Additionally, this was not the sole statement concerning Mr. Mayhew's motive. The prosecutor also argued, "This is a man who is - the defendant is a man who is sexually motivated by the prepubescent, a man with a sexual affliction for the young," and "I'm willing to bet that most of us in this room don't have 900 printed photos of our own children, let alone somebody else's, in a shoe box. This is a man with a sexual affliction for the young." Thus, while the prosecutor could have articulated the motive connection more clearly, we are unable to find that the argument deviated from the proper use for which the photos and videos were admitted.
[¶44] Finally, Mr. Mayhew suggests that the limiting instruction the district court gave the jury concerning the other acts evidence was inadequate because it referenced only prior acts, not acts subsequent to the charged crimes. While Mr. Mayhew offered his own limiting instruction, which was refused by the district court, he offered no objection to the limiting instruction the court did give. Normally, this would mean our review would be for plain error. Farrow v. State , 2019 WY 30, ¶ 22, 437 P.3d 809 (Wyo. 2019) (if specific objection is not made to an instruction, review is for plain error). Mr. Mayhew has not, however, presented a plain error analysis on appeal, and we therefore will not consider his claim. See Huckfeldt v. State , 2013 WY 29, ¶ 26, 297 P.3d 97, 104 (Wyo. 2013) (citing Vigil v. State , 2010 WY 15, ¶ 21, 224 P.3d 31, 39 (Wyo. 2010) ) (declining to review Rule 404(b) limiting instruction where defendant did not object to instruction or argue plain error on appeal).
[¶45] The district court conducted the required Rule 404(b) analysis and had a legitimate basis for finding the photos and videos both probative of Mr. Mayhew's motive and relevant in light of his denial of any wrongdoing. We therefore find no abuse of discretion in the admission of the photos and videos.[7]
B. Admission of Vibrator
[¶46] Mr. Mayhew claims the district court erred in admitting into evidence the vibrator collected from Mr. Mayhew's home. He asserts two grounds for this claimed error: 1) the State failed to list the vibrator as an exhibit in its pretrial memorandum; and 2) the vibrator was admitted without proper foundation. We begin by setting forth the circumstances of the court's ruling and then address each ground asserted for the claimed error separately.
[¶47] On the second day of trial, during MT's testimony, the State moved for admission of the vibrator over Mr. Mayhew's objection.
Q. What's the first time, the first memory you have of it?
A. The first memory was a vibrator. I was playing dress-up. I was in a baby blue dress. We were in his bedroom. And I was lying on the bed, and he would have me put the vibrator on my private parts.
Q. Were you -
[DEFENSE COUNSEL]: May we approach, Your Honor?
THE COURT: You may.
(The following bench conference was held out of the hearing of the jury:)
[DEFENSE COUNSEL]: I believe the State is going to be offering the vibrator as evidence, but it wasn't listed as an exhibit in the trial brief. I believe the State will be seeking to introduce the vibrator as evidence, but it wasn't listed as evidence in the trial brief.
[PROSECUTOR]: I thought boilerplate evidence seized from the defendant's home was listed in the trial brief and that was one of the items used from the defendant's home. Certainly, counsel has had notice of it. It's listed in the reports. It's part of the defendant's interview when it was seized, so there's no surprise.
THE COURT: [Defense Counsel], can you articulate any other prejudice other than - *632 I'll look at the trial brief, but other than the failure to list it, is there prejudice?
[DEFENSE COUNSEL]: Your Honor, it was provided in discovery, but was not listed in what would be introduced in the case in chief in preparing for trial.
THE COURT: What would you have done differently had you known it was going to be used? I mean, did that affect your defense at all?
[DEFENSE COUNSEL]: I don't believe it affected the defense at all, Your Honor. But I'm not understanding the purposes of listing those items if it doesn't matter ultimately.
THE COURT: I can appreciate that and certainly it should have been listed, but part of the exercise of discretion is what prejudice there is flowing from that. Let me take a minute and look at the pretrial and see what's on there, and then I'll give you a ruling.
* * * *
THE COURT: ... All right. The objection is overruled. And I'll make a further record on it at a break.
Please proceed.
[PROSECUTOR]: Permission to approach, Your Honor.
THE COURT: You may.
[PROSECUTOR]: I'm handing you State's Exhibit 31.
Do you recognize that?
A. Yes.
Q. What is it?
A. It's a vibrator.
Q. Is that the one that he used on you when you were lying on the bed?
A. Yes.
Q. Okay.
[PROSECUTOR]: We would offer State's Exhibit 31 into evidence.
THE COURT: Any further objection?
[DEFENSE COUNSEL]: Same objection, Your Honor. And - same objection at this point, Your Honor.
THE COURT: Based on the objection, the objection is overruled.
[¶48] At the break, the court made a further record on the admission of the vibrator and had the following exchange with counsel:
THE COURT: ... I want to make more of a record with respect to the Exhibit 31. The bench conference I think was reported, but we're struggling a little bit with the technology related to that. The defendant objected that it was not included in the pretrial memo. The State - and I'm paraphrasing, but this is - State basically responded and said, yeah, we forgot. But it wasn't anything of surprise. It was disclosed many weeks or months ago. And a number of statements relating to the vibrator existed, and I gather its availability for inspection was there as well.
I then asked [defense counsel] any specific prejudice beyond just a failure to list it. And, essentially, she said, well, why do we have the requirement to disclose it to begin with if it's not going to be followed?
I then looked at the pretrial memo, and, indeed, it had not been included specifically. However, based on the Court's discretion, I didn't find that there was significant prejudice to the defendant and there was clear knowledge of its existence and its involvement in this case. So I allowed it in over the defendant's objection.
Then when it was offered, at the time it was offered, defendant, again, objected based on the same basis, and I overruled that. So that's the record.
[Defense Counsel], anything else you'd like to make of record on that issue?
[DEFENSE COUNSEL]: I would, Your Honor.
Just in respect to that specific witness. Because of those objections, I feel I missed a foundation objection. So before it's presented, if it's presented to further witnesses from here on out, I would like some foundation established in regard to that and not just presenting it. So, I guess, that's just a heads-up to the State, because I would be objecting at that point.
The other portion that I just want for the record is that this is indicated in another report as being something that was manufactured in 2004, which is outside the dates of the alleged offense, which is probably *633 why I didn't anticipate it really being an error, but I can save that for cross-examination.
THE COURT: [Prosecutor]?
[PROSECUTOR]: Your Honor, I think foundation was laid. The victim was testifying that the defendant made her use a vibrator on herself. And I approached and showed it to her and she said, yeah, that's it.
I don't know what other foundation is required. She's looking at it. It's not like a 5-year-old child is going to have serial numbers memorized from a vibrator. She looks at it, she sees it, that's it. So I think there is sufficient foundation. It's been admitted into evidence, and so it can't be unadmitted now.
THE COURT: Do you expect to call an officer or somebody to say, yeah, we seized this, and here's the chain of custody and this is how it came about?
[PROSECUTOR]: Yeah.
THE COURT: Frankly, when I asked [defense counsel] any other basis, I was contemplating a foundation basis, but that wasn't what was articulated, so it was admitted. So I think it's been waived. But I do think it's kind of sitting out there right now without a whole lot of explanation of how it got to the courtroom today, where it was found and those sorts of things.
[PROSECUTOR]: Right. And that's my job to do that with another witness when the time is appropriate.
THE COURT: Based on that linking up of that, the objection is overruled. I mean, I think it's waived. You have to be specific in your basis of your objection for me to rule on them, and that wasn't any more specific, so -
[PROSECUTOR]: With respect to foundation, the victims are not going to have personal knowledge as to the chain of events for it to be. Seized; so foundationally, is this the vibrator that he used?
THE COURT: I understand. And that would be a different assessment if the objection was foundation and you approached the bench and said, oh, I've got witness A, B, and C that are going to link this all up, which is essentially what you're telling me now. But it's been admitted. So I do still anticipate the State linking that up to some extent, irrespective of having been admitted or not because it flushes out the case, but I anticipate you doing that.
Based on that, the objection by the defendant and this new objection, foundation, is overruled. And 31 is admitted.
[PROSECUTOR]: And I also just want to state for the record, Your Honor, that defense counsel went to the police department on December 19th, met with Sergeant Keller, examined for herself all of the evidence, it was all opened for her. She had an opportunity to view it long before even the State did.
THE COURT: All right. That's the record with respect to Exhibit 31.
[¶49] Through the testimony of Sergeant Daniel Keller of the Sheridan police department, the State established the chain of custody as the district court requested. Defense counsel then cross-examined Sergeant Keller concerning the vibrator's date of manufacture and established that a manufacturer representative told him the vibrator was manufactured in 2004. In closing argument, defense counsel then argued:
And you did hear from Sergeant Keller, and specifically you heard that he followed up with the manufacturer of the vibrator that was introduced into evidence. And what he testified about in regard to that is when calling the manufacturer, he found out the manufacturing date, and that manufacturing date was June of 2004. Outside all of the dates that are presented to you in the elements instructions that are in your packet. The same vibrator that was identified by all the individuals that testified in regard to it with the manufacturing date afterwards.
[¶50] Against that record of the district court's admission of the vibrator into evidence, we consider Mr. Mayhew's claims of error.
1. State's Failure to List the Vibrator in Pretrial Memorandum
[¶51] Concerning a district court's enforcement of its pretrial orders we have said:
*634 The district court has discretion to determine what, if any, sanctions are appropriate for failing to comply with discovery responsibilities or its pre-trial orders. See W.R.Cr.P. 16(d)(2) ; Majors v. State , 2011 WY 63, ¶ 35, 252 P.3d 435, 443-44 (Wyo. 2011). "A district court abuses its discretion if it could not have reasonably concluded as it did." Id. , ¶ 24, 252 P.3d at 441. "In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious.' " Szymanski v. State , 2007 WY 139, ¶ 15, 166 P.3d 879, 883 (Wyo. 2007). Even if the district court abused its discretion in granting or failing to impose sanctions, an appellant still must demonstrate prejudice to warrant reversal. See Willoughby v. State , 2011 WY 92, ¶ 26, 253 P.3d 157, 165 (Wyo.2011).
Craft v. State , 2013 WY 41, ¶ 14, 298 P.3d 825, 830 (Wyo. 2013).
[¶52] We are unable to find anything unreasonable in the district court's overruling of Mr. Mayhew's objection based on the State's failure to list the vibrator as an exhibit in its pretrial memorandum. Defense counsel did not claim surprise and affirmatively declared that the defense was not affected by the State's omission. Given defense counsel's disavowal of any prejudice, we can find no abuse of discretion in the ruling.
2. Lack of Foundation
[¶53] Mr. Mayhew did not object on foundation grounds when the State offered the vibrator and the district court ruled on its admissibility. Absent a timely objection to the evidence below, we generally would review the district court's ruling for plain error. Dumas v. State , 2018 WY 120, ¶ 10, 428 P.3d 449, 452 (Wyo. 2018). However, this Court recently stated that we favor a rule that objections to evidence for lack of foundation should not be considered for the first time on appeal.
As noted above, Mr. Young did not object to the admission of Mr. Kent's testimony at trial. Accordingly, review for plain error is the only review available to Mr. Young. Before embarking upon that analysis, however, we note that several jurisdictions have refused to conduct a plain error review where the defendant failed to object on the basis of inadequate foundation. These cases reason that the defendant's failure to object deprives the State of an opportunity to correct any deficiency in the proof and, as a result, provides an opportunity for the defendant to seek reversal of his conviction in the event of an unfavorable outcome at trial. ...
* * * *
We find the reasoning of these cases to be compelling. If a party raises a timely objection, the other party has the opportunity to lay an adequate foundation. Mr. Young's failure to object deprived the State of an opportunity to cure any deficiency in the foundation for the opinion testimony. Accordingly, we question whether the appellant's claim is properly considered for the first time on appeal. We are reluctant to decide the case on this basis, however, because the issue was not raised or briefed by the parties. We will instead turn to the question presented, which is whether Mr. Young has established plain error.
Young v. State , 2016 WY 70, ¶¶ 16,18, 375 P.3d 792, 796-98 (Wyo. 2016) (footnote and cited cases omitted).
[¶54] As indicated, we did not adopt the rule in Young because the parties had neither raised nor briefed the issue. In this case, the State did raise and brief the question, and we thus take this opportunity to adopt this approach to foundation objections. For the reasons stated in Young , objections based on the adequacy of foundation must be made when evidence is offered, and the failure to make a timely objection will preclude appellate review. Mr. Mayhew did not object to the vibrator's foundation when it was offered for admission, and appellate review of his claim is therefore barred.[8]
*635 CONCLUSION
[¶55] We find no abuse of discretion in the district court's admission of photos and videos under Rule 404(b) or in its overruling of Mr. Mayhew's objection to the vibrator based on the State's failure to list the exhibit in its pretrial disclosure. We further hold that the failure to timely object to evidence on the basis of foundation precludes appellate review of that claim, and we therefore do not consider Mr. Mayhew's claim that the district court erred in admitting the vibrator without proper foundation. Affirmed.

The charges for each victim generally alleged sexual contact without sexual intrusion and were based on the statutes in effect when the alleged conduct occurred, at varying times between 1994 and 2006.

ST did not testify, and the district court granted Mr. Mayhew's motion for a directed verdict on the charge related to the allegations relating to her.

During this testimony, the State offered into evidence a vibrating massager that investigators collected from Mr. Mayhew's home and that MT identified as the vibrator he had her use. Defense counsel objected based on the State's failure to identify the vibrator in its pretrial memorandum but agreed that she had notice of the vibrator and that the defense was not affected by the State's failure to list it as a trial exhibit. The district court overruled the objection and admitted the vibrator.

Mr. Mayhew does not appeal the district court's admission of his daughter's testimony.

We have omitted the court's discussion of any factors not implicated by Mr. Mayhew's contentions on appeal.

In concluding the district court did not abuse its discretion in finding that the photos and videos were probative and relevant, we distinguish this Court's decision in Mersereau v. State , 2012 WY 125, 286 P.3d 97 (Wyo. 2012), abrogated on other grounds by Rodriguez v. State , 2019 WY 25, 435 P.3d 399 (Wyo. 2019). In Mersereau , the defendant was charged with sexually abusing his son, and the district court admitted nude photos of the victim and his brother that were in the defendant's possession. Id. ¶ 16, 286 P.3d at 106. The Court held it was error to admit the photos.
Finally, the nude photos of the victim and his brother were not relevant or probative to show the appellant's motive for assaulting the victim. At the hearing, the State claimed the photos were relevant and probative to show the appellant had a "fetish with anal sex." On appeal, the State argued that the photos show that the appellant was sexually attracted to children-more specifically his child. Unfortunately, neither party designated the photos as part of the record on appeal, which makes it much more difficult to determine whether these photos are more sinister than innocent family photos. The district court found that:
These images show the children taking baths or potty training. Other images, however, are more disturbing. Many of the offered images show E.A.M. and L.A.W. playing outdoors in the mud while nude, with mud smeared on the children's body and genitalia. Others show [the appellant] sitting in the bathtub with L.A.W. on his lap. At least three of the images focus on the children's genitals or buttocks. One picture shows a young child face down on a bed with his buttocks and hips extended up into the air.
Viewing this evidence in the light most favorable to admission, we still find that concluding these photos are relevant or probative to show that the appellant had a fetish with anal sex or that he was sexually attracted to the victim is far-fetched. Perhaps if the photos depicted the victim engaging in some sort of inappropriate behavior dealing with the buttocks area or showed the appellant engaging in some sort of sexually suggestive activity with the victim, we would find a different result. But the fact that even the district court leaves open the possibility that these photos may be innocent in nature demonstrates that an insinuation to the contrary would be more unfairly prejudicial to the appellant than what very minimal (if any) probative value the photos may have
Id. ¶ 28, 286 P.3d at 110-11.
In Mersereau , the photos in the defendant's possession were of his own children, which is not as unusual as a large collection of photos of children unrelated to the accused. Additionally, the Court in that case was unable to evaluate the sexual nature of the photos because they were not in the record. Here, the photos and videos are in the record, and based on our review of them we cannot say that the district court was without a legitimate basis for ruling that they have probative value and are relevant.

Mr. Mayhew confines his argument to the probative value and relevance of the photos and videos and offers no argument that even if the evidence were probative and relevant, its potential for unfair prejudice outweighed its probative value. We therefore do not address that prong of the district court's Rule 404(b) analysis.

Even if we were to adhere to our plain error standard of review, we would reject Mr. Mayhew's claim because he did not offer a plain error analysis. See Huckfeldt , ¶ 26, 297 P.3d at 104 (declining to consider argument where appellant failed to object below or offer a plain error analysis).